**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Otha Lee MAHONE,
Defendant-Appellant.**

No. 75–1931.

United States Court of Appeals,
Seventh Circuit.

Heard Feb. 23, 1976.

Decided July 1, 1976.

Rehearing and Rehearing En Banc
Denied Aug. 17, 1976.

Calvin K. Hubbell, Valparaiso, Ind., for defendant-appellant.

John R. Wilks, U.S. Atty., Fort Wayne, Ind., Richard A. Hanning, Asst. U.S. Atty., Hammond, Ind., for plaintiff-appellee.

Before PELL, BAUER, Circuit Judges, and PERRY, Senior District Judge.*

BAUER, Circuit Judge.

Appellant challenges his conviction under 26 U.S.C. §§ 5861(d) and (i) for possessing a sawed-off shotgun not registered to him and not identified by a serial number. The

---

* The Honorable J. Sam Perry, Senior Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

principal questions raised on appeal concern the legality under the Fourth Amendment of the seizure of the shotgun, the propriety of the trial judge's refusal to give an "absent witness" instruction and his refusal to let counsel for the defendant refer to the "absent witness" in the final argument, and the procedure to be followed by the trial judge in admitting evidence of the defendant's prior conviction for impeachment purposes under Federal Rule of Evidence 609. We affirm the conviction.

## I.

In the early morning of March 26, 1975, four East Chicago, Indiana, police officers in an unmarked car responded to a radio call reporting an armed robbery at the Soul Snack Shop at the corner of 150th and Alexander Streets in East Chicago. At the scene, a witness told the officers that he observed "three carloads of subjects" armed with weapons and that one of the cars was a black over blue Plymouth. The officers then left the shop and patrolled the area.

About fifteen minutes later they say a black over blue Plymouth pull to the side of the road behind a parked car about one block from the snack shop. The policemen pulled behind the Plymouth, preventing it from moving. The officers then left their car with their weapons drawn, two officers going to either side of the Plymouth. As they approached the right side of the Plymouth, one of the policemen, Officer Belzeski, saw the passenger in the front seat holding a weapon. While ordering the front seat passenger to drop the weapon, Officer Belzeski saw the passenger in the right rear seat, the defendant, place a weapon on the floor of the car. After the suspects left the Plymouth, Officer Belzeski retrieved a sawed-off shotgun from the rear seat floor of the car. The defendant was convicted of possessing the shotgun.

## II.

The first issue raised by the appellant is whether the shotgun was lawfully seized. We hold that the seizure was lawful since it occurred during a proper *Terry*[1] investigative stop.

" 'A police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest' [*Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] . . . . A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Adams v. Williams,* 407 U.S. 143, 145–6, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972).

The officers here acted upon facts sufficient to justify stopping the suspect's automobile. While investigating an armed robbery, an informant who had personally observed the suspects gave them a description of the make and color of the suspect's car. Within minutes, the officers saw the described car a short distance from the place where the informant had seen it.

We rely on *United States v. Adams,* 484 F.2d 357, 360 (7th Cir. 1973), in which this Court upheld a *Terry* stop based on similar facts. The Court in *Adams* particularly relied upon three elements present in the instant case: (1) a moving automobile, an element which has justified warrantless stops in various police investigation situations, *Coolidge v. New Hampshire,* 403 U.S. 443, 459–460, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States,* 267 U.S. 132, 153, 45 S.Ct. 280, 69 L.Ed. 543 (1925); (2) an informant's tip based on personal observation, rather than on suspicion or belief, see *Spinelli v. United States,* 393 U.S. 410, 416, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 113, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); and (3) the automobile being stopped within close physical and temporal proximity to the crime being in-

1. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

vestigated. See *United States v. Zapata,* 535 F.2d 358 (7th Cir., 1976); *United States v. Lovenguth,* 514 F.2d 96 (9th Cir. 1975).

The sawed-off shotgun was properly seized as contraband during the stop.

"It is clear that contraband (defined as an item the possession of which in itself is a crime) may be seized in the course of a legal search. Cf. *Harris v. United States,* 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947). The sawed-off shotgun which formed the basis of the offense in the instant case is contraband. See 26 U.S.C. §§ 5841, 5861(d), and 5871; 49 U.S.C. § 781(b)(2)." *United States v. Adams, supra,* 484 F.2d at 361, n. 2.[2]

### III.

The appellant's second alleged error involves the absence of testimony at trial by one of the four police officers present during the seizure of the shotgun. During its opening argument the government mentioned that it would show at trial that four officers were involved in the arrest of the defendant. Only three of the officers were called to testify.

The appellant considered the government's failure to produce the fourth officer significant enough to warrant an instruction indicating to the jury that it could draw an inference that the officer's testimony would have been unfavorable to the government. The trial judge refused the defendant's request for such an instruction, and after considerable argument and deliberation refused to permit appellant's counsel to comment on the absence of the witness in his final argument. The appellant claims that is was error for the trial judge to refuse to give the instruction and to forbid comment on the point.

"The rule . . . is that, if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." *Graves v. United States,* 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893).[3]

See also *United States v. Grizaffi,* 471 F.2d 69, 74 (7th Cir. 1972); *United States v. Young,* 150 U.S.App.D.C. 98, 463 F.2d 934, 939 (1972); 2 J. Wigmore, *Evidence* § 285 at 162 (3d ed. 1940); McCormick, *Evidence* § 272 at 656 (2d ed. 1972).

■ The first thing that must be shown before a party can raise to the jury the possibility of drawing an inference from the absence of a witness is that the absent winess was peculiarly within the other party's power to produce. This requirement is met both when a witness is physically available only to the opposing party, *Brown v. United States,* 134 U.S.App.D.C. 269, 414 F.2d 1165 (1969), and when the witness has a relationship with the opposing party "that would in a pragmatic sense make his testimony unavailable to the opposing party regardless of physical availability," *Yumich v. Cotter,* 452 F.2d 59, 64 (7th Cir. 1971); *United States v. Blakemore,* 489 F.2d 193, 195 (6th Cir. 1973).

■ In the case at hand, Officer Payne was outside the courtroom during the trial and thus physically available to both parties. Recognizing this, the appellant argues that the officer was not in fact available to him because of the officer's special relationship with the prosecution. We agree with the appellant. While Officer Payne was not employed by the prosecutor, being a state officer in a federal prosecution, he was closely associated with the United

---

2. Since the seizure of the shotgun was proper under both Constitutional and Indiana standards, see Section 35-3-1-1, Ind.Ann.Stat.; *Williams v. State,* 40 Ind.Dec. 699, 307 N.E.2d 457 (1974); *Luckett v. State,* 32 Ind.Dec. 74, 284 N.E.2d 738 (1972), we need not determine whether the trial court would have had to suppress the evidence if the Indiana standard was not met, as the appellant argues.

3. Since *Graves,* courts have generally recognized that an *inference* rather than a *presumption* of unfavorable testimony is raised in such a situation. *Burgess v. United States,* 142 U.S. App.D.C. 198, 440 F.2d 226 (1970).

States Attorney in developing the case and had an interest in seeing his police work vindicated by a conviction of the defendant.

"[W]here there is likelihood of bias on the part of the person not called as a witness in favor of one party, 'that person is not, in a true sense, "equally available" to both parties.'" *Yumich v. Cotter,* 452 F.2d 59, 64 (7th Cir. 1971).

▮ The second thing that must be shown is that the testimony of the witness would elucidate issues in the case. "No inference is permissible . . . where the unpresented evidence would be merely cumulative," *United States v. Johnson,* 467 F.2d 804, 808 (1st Cir. 1972), *cert. denied* 412 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973), or where it would be irrelevant to the issues in the case, *United States v. Emalfarb,* 484 F.2d 787 (7th Cir. 1973), *cert. denied* 414 U.S. 1064, 94 S.Ct. 571, 38 L.Ed.2d 469 (1973).

The government contends that Officer Payne's testimony would have been cumulative in view of the testimony of the other officers present at the scene. The appellant contends that Officer Payne's testimony would not have been cumulative since it would have shed light on the allegedly conflicting testimony of two of the other officers regarding the appellant's possession of the shotgun. Officer Belzeski, who was crouched at the right rear window of the car near where the appellant was sitting, testified that he saw something that looked like a weapon in the appellant's hands while the appellant's head was turned toward Officers Arreguin and Payne, who were standing on the left side of the car. Officer Johnson, who was standing behind the car on the right side, testified that the appellant had turned toward the left side of the car and had positioned his body into the right rear corner of the back seat. Johnson thus was unable to see whether the appellant held a weapon. The appellant argues that the testimony of Officer Payne, who purportedly had a full view of the appel-

lant's body from the left side of the car, would have verified Belzeski's somewhat uncertain testimony that the appellant was holding a weapon.

From the record in this case it cannot be determined whether the testimony of Officer Payne would have been cumulative of the testimony of the other officers. It is unclear whether he would have testified that he could not see the defendant from his position at the left side of the car, testimony which would have been cumulative and irrelevant, or that he would have testified that he had a full view of the defendant and saw no weapon, as the appellant would like the jury to infer, or that he had a full view of the defendant and saw the weapon in his hands.[4]

▮ Given the uncertainty of whether Officer Payne's testimony would have been cumulative and irrelevant, we cannot say the trial judge erred by not giving the absent witness instruction. In cases such as this where it is debatable whether the absent witness' testimony would have elucidated the issues in the case, there should be latitude for the judge to decide whether the requested instruction would be unnecessary and time consuming for the jury. *United States v. Bautista,* 509 F.2d 675 (9th Cir. 1975); *United States v. Young,* 150 U.S. App.D.C. 98, 463 F.2d 934 (1972).

▮ However, we think the trial judge erred by refusing to let the defense counsel comment in his final argument on the government's failure to call the absent witness.

"There is a difference between an instruction, which has the weight of law, and argument of counsel, which is only that. . . . . [I]n the in-between case where each side has the physical capacity to locate and produce the witness, and it is debatable which side might more naturally have been expected to call the witness, there may be latitude for the judge to leave the matter to debate without an

---

4. This uncertainty over the officer's testimony could have been obviated by the defendant's counsel requesting the judge to direct the wit-

ness to tell counsel what he would say if called to testify.

instruction, simply permitting each counsel to argue to the jury concerning the 'natural' inference of fact to be drawn." *United States v. Young,* 150 U.S.App.D.C. 98, 463 F.2d 934, 943 (1972). *Accord,* McCormick, *Evidence* § 272 at 659 (2d ed. 1972).

From the record it appears that the trial judge refused to allow comment regarding the absent witness at least in part because he believed such comment would open the door for the parties to argue matters not presented to the jury on the record, viz., whether Officer Payne's testimony would have been cumulative and whether Officer Payne could have been called by the defense.

■ While we recognize the trial judge's discretion to limit argument over time consuming peripheral issues in the interests of judicial economy and reducing juror confusion, exercising tight control over the argument is undesirable when it precludes counsel from raising a significant issue.

The combination of the reference to the four arresting officers in the government's opening statement, the peculiar availability of the witness to the government, and the sighting of the weapon in the defendant's hands by only one officer raises a significant enough question regarding the grounds for the government's failure to call Officer Payne to testify to justify argument on the point by the defendant's counsel.

Nevertheless, in the context of the entire case we cannot say the error was prejudicial. Even if the jury had drawn the inference that Officer Payne would have testified that he did not see a weapon in the defendant's hands when he approached the car, this inference could, at most, have harmed the government's case by rebutting Officer Belzeski's testimony that the defendant was holding a gun while he was in the car. The independent evidence of the shotgun being found in the back seat of the car where the defendant had been sitting still stands. This evidence is sufficient to sustain the conviction.

## IV.

■ Petitioner's next point of error is that the trial judge failed to make the determination required by Federal Rule of Evidence 609(a), 28 U.S.C., before admitting evidence of the defendant's prior robbery conviction for impeachment purposes.

The relevant portion of Rule 609 reads: "(a) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant . . . ."

The trial judge allowed the admission of the prior conviction, *in limine,* prior to trial, after hearing argument by the attorneys regarding the nature of the prior conviction, the possible prejudice to the defendant if it was admitted, and the proper procedure to be followed for its admission under Rule 609. The judge ruled on the record: "[I]f the defendant takes the stand and testifies, the Court will permit, on the basis of the record now before it, impeachment of this defendant in the normal manner by the robbery conviction", (Tr. at 10).

The appellant claims that the court erred by not making an explicit determination on the record that the probative value of the evidence outweighed its prejudicial effect to the defendant. The government argues that such a determination is one within the discretion of the trial judge and that the appellant has not shown that this discretion was abused.

On the basis of the record we cannot say that the trial judge failed to meaningfully exercise the discretion given him by Rule 609. His ruling permitting the admission of the evidence "on the basis of the record now before it" indicates implicitly that, in

line with the rule, he weighed the prejudicial effect against the probative value of the evidence. The record before the judge, upon which he explicitly relied in his ruling, consisted of argument by the parties over those very matters.

■ In the future, to avoid the unnecessary raising of the issue of whether the judge has meaningfully invoked his discretion under Rule 609, we urge trial judges to make such determinations after a hearing on the record, as the trial judge did in the instant case, and to explicitly find that the prejudicial effect of the evidence to the defendant will be outweighed by its probative value. When such a hearing on the record is held and such an explicit finding is made, the appellate court easily will be able to determine whether the judge followed the strictures of Rule 609 in reaching his decision. 3 J. Weinstein, *Evidence* ¶ 609[03] at 609–78 (1975).

■ The hearing need not be extensive. Bearing in mind that Rule 609 places the burden of proof on the government, Cong. Rec. 12254, 12257 (daily ed., December 18, 1974) (remarks of House conferees); 3 J. Weinstein, *Evidence,* ¶ 609[03] at 609–40, 41, 42 (1975), the judge should require a brief recital by the government of the circumstances surrounding the admission of the evidence, and a statement of the date, nature and place of the conviction. The defendant should be permitted to rebut the government's presentation, pointing out to the court the possible prejudicial effect to the defendant if the evidence is admitted.

■ Some of the factors which the judge should take into account in making his determination were articulated by then Judge Burger in *Gordon v. United States,* 127 U.S.App.D.C. 343, 383 F.2d 936, 940 (1967):

(1) The impeachment value of the prior crime.

(2) The point in time of the conviction and the witness' subsequent history.

(3) The similarity between the past crime and the charged crime.

(4) The importance of the defendant's testimony.

(5) The centrality of the credibility issue. See 3 J. Weinstein, *Evidence,* ¶ 609[03] at 609–78 to 609–75 (1975).

## V.

Appellant raises three other issues which do not merit extended discussion.

### Joint Possession Instruction

■ Appellant alleges that the court erred in giving an instruction over his objection which permitted the jury to find that the appellant illegally possessed the weapon if he shared possession with another. He argues that since no evidence of joint possession was presented at trial, the instruction was unnecessary and confused the jury. We find no error here. As the appellant concedes, the instruction properly set forth the necessary elements of possession to the jury. The evidence at trial that there were four persons in the car in which the gun was found was a sufficient basis for the giving of the instruction.

### Government's Prejudicial Opening Statement

■ In his opening statement, the prosecutor mentioned that the four police officers who arrested the appellant were in the area in response to a radio call concerning an armed robbery. After objection by the appellant's counsel and a motion for a mistrial, the trial judge admonished the jury to disregard the reference to the armed robbery and gave them a cautionary instruction. The appellant argues that his motion for a mistrial should have been granted due to the statement's prejudicial effect on the jury. In view of the relevance of the statement to the evidence at trial—it showed the reason for the officers' stop of the appellant's car—and its noninflammatory nature, we think that the denial of the motion for a mistrial was proper. This was not a statement "wholly irrelevant to any facts or issues in the case, the purpose and effect of which could only have been to arouse passion and prejudice." *Viereck v. United*

**930**

*States,* 318 U.S. 236, 247, 63 S.Ct. 561, 566, 87 L.Ed. 734 (1943).

### Admission of Shotgun

The shotgun which the appellant was convicted of possessing was admitted into evidence after Officer Belzeski, the officer who arrested the appellant, identified the gun as the one seized from the appellant at the time of his arrest. The appellant objected to its admission since no proof was presented of the complete chain of custody of the gun from its seizure until the trial.

In *United States v. Blue,* 440 F.2d 300, 303 (7th Cir. 1971), this Court held that "[t]he chain of custody is not relevant when a witness identifies the object as the actual object about which he has testified." A chain of custody must be proved when the condition of the object at a prior time is in issue. See *United States v. Panczko,* 353 F.2d 676 (7th Cir. 1965). In the case at hand, the only condition of the gun which was in issue was the length of the barrel. For a conviction under the statute applied here, the barrel of a shotgun must be less than 18 inches in length. 26 U.S.C. § 5845. The gun admitted at trial had a barrel length of 8⅞ inches. If the barrel of the gun seized had been 18 inches and the gun had been altered to such an extent in the interim, surely Officer Belzeski would not have been able to identify it as the same object he seized when arresting the defendant. The court did not err in admitting the weapon.

AFFIRMED.