**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Earlie BROWN, Jr., Defendant–Appellant.**

**No. 93–3966.**

United States Court of Appeals, Seventh Circuit.

Argued June 2, 1994.

Decided Sept. 12, 1994.

Robert Lee Garrison, Office of U.S. Atty., Crim. Div., Fairview Heights, IL (argued), for plaintiff-appellee.

William Gavras, St. Louis, MO (argued), for defendant-appellant.

Before FAIRCHILD, FLAUM and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

The defendant, Earlie Brown, Jr., challenges the district court's decision to allow a peremptory challenge against a black woman

and to admit into evidence some of Brown's prior bad acts. We affirm.

## I. Background

Brown, along with a coconspirator, attempted to purchase a kilogram of cocaine from some undercover police officers. In furtherance of the scheme Brown conducted counter-surveillance from across the street and contributed $20,000 of the $23,600 cash used in the attempted drug-buy. When the police simultaneously arrested both Brown and his coconspirator, Brown's fingerprints were found on the box containing the drug money. After the arrest a federal grand jury returned a two count indictment (under 21 U.S.C. § 841(a) and § 846) against Brown for his participation in the conspiracy and attempted purchase of cocaine. Two weeks before his jury trial Brown filed a motion in limine, under Fed.R.Evid. 404(b), to keep evidence of his prior drug dealing away from the jury. The district court denied his motion. Later, during the *voir dire*, the prosecutor used a peremptory to challenge a potential juror ("Lumas") whose race happened to be black. The defendant objected to this peremptory citing *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Upon questioning by the court the prosecutor explained that Lumas had been challenged as an unemployed person, from an unemployed family, who might be inappropriately sympathetic toward an unemployed defendant. Over defense counsel's continuing objection the court allowed the peremptory. The subsequently empaneled jury convicted Brown on both counts of the indictment.

## II. Analysis

Brown challenges his conviction arguing that (A) the prosecutor impermissibly used a peremptory strike to dismiss a juror, and (B) the trial court improperly admitted the defendant's prior bad acts. We shall address these arguments serially.

### A. Peremptory Challenge

■ The Supreme Court has read the fourteenth amendment to forbid the use of peremptory strikes to dismiss potential jurors on account of race. *Batson*, 476 U.S. at 96, 106 S.Ct. at 1722. Under *Batson* a defendant hoping to successfully challenge a peremptory must make a *prima facie* showing that he is a member of a cognizable racial group, and that a pattern has developed that peremptory strikes are being used to remove members from the venire with at least some inference that the challenges are based on race. *Id.* at 96, 106 S.Ct. at 1722. Once such a showing has been made, the prosecutor has to explain the strike on racially neutral grounds. *Id.* at 97, 106 S.Ct. at 1723. The trial judge then decides whether to allow the peremptory. We reverse this judgment only if clearly erroneous. *Id.* at 98, 106 S.Ct. at 1723.

■ The record in this matter is silent with respect to any facts supporting a *prima facie Batson* case. Of course the trial judge could have been merely exercising caution when he requested that the prosecutor give a neutral explanation for challenging Lumas. In any event, since the parties do not dispute the existence of the *prima facie* case, we shall proceed as if such a burden had been carried. *See United States v. Changco*, 1 F.3d 837, 839–40 (9th Cir.1993).

■ To survive a *Batson* challenge, unlike a challenge for *cause*, a peremptory strike need not be based on a strong or good reason, only founded on a reason other than race or gender. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723; *J.E.B. v. Alabama*, —— U.S. ——, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). Generally, challenges striking a juror because she and everyone in her household are unemployed would survive a *Batson* type scrutiny, especially when, as here, the defendant is also unemployed. The prosecutor of such an unemployed defendant may have concerns that an unemployed juror might be improperly sympathetic. Certainly, this may be too speculative to strike a juror for *cause*; however, under the American legal system counsel for both parties have a limited number of peremptory strikes to use according to their individual intuitions regarding jurors. *See Lewis v. United States*, 146 U.S. 370, 378, 13 S.Ct. 136, 139, 36 L.Ed. 1011 (1892).

■ Since Lumas was the only person challenged for familial unemployment, the

defendant might have argued that the prosecutor merely linked the two unemployment characteristics as a pretext to exclude a black juror. This argument, however, seeks to establish too much. Defendants may point to nearly any combination of features claiming pretext. While a combination of characteristics may at times combine to eliminate some from the venire who happen to be members of a racial group, standing alone such a result cannot translate into a conclusion that the strike was racially motivated. We note that this circuit has explicitly approved of a prosecutor combining characteristics to strike jurors, even when challenged under *Batson*. *See United States v. Hughes*, 970 F.2d 227, 231 (7th Cir.1992); *United States v. Ferguson*, 935 F.2d 862, 865 (7th Cir.1991). Whether characteristics have been combined in good faith or as a pretext is primarily for the trial court's assessment and entitled to our deference. *Batson*, 476 U.S. at 98, n. 21, 106 S.Ct. at 1724, n. 21. We cannot find any basis for concluding that the district court committed error in allowing the prosecutor's use of the family's unemployment in combination with Lumas' status to challenge her jury service.

◼ After the *Batson*–type arguments, Brown raises two additional, rather novel claims. First he argues that the district judge originally ruled or at least seemed ready to rule in his favor on Lumas, and then the judge "impermissibly" changed his mind. Brown is emphatic that the judge's original "ruling" should be given all the deference we can muster, since when he made it he was uniquely positioned to make the *Batson* assessments described above. Then, Brown says, the judge's reasons for changing his mind should be examined, and if they are bad reasons, his original decision not to allow the strike should be reinstated. Brown's position apparently rests on a misconception of how judges make decisions and how we review them. Here the judge heard some arguments from both sides, questioned the

prosecutor, heard some more arguments, and then decided to allow the peremptory. We cannot freeze the judge's thinking at some moment during the argument. We review a trial court's final rulings and judgments, not its first-cut reactions to counsel's arguments. The recorded reasoning of trial courts on the many decisions they make need not always be crisp and tidy. What we know is that this court's conclusion is amply supported by the law and not undercut in any way by any facts or rulings in the record.

◼ We must also reject Brown's second novel argument. Brown complains that he was actually not unemployed, but rather self-employed as a fisherman, card player, and lawn-mower man. As his reasoning goes, since Brown was employed the unemployment of Lumas and her family was not relevant, and thus the prosecutor's peremptory was impermissible. We do not need to settle the extent of Brown's employment (or underemployment) in evaluating the relevance of a challenged peremptory strike. It is enough. that the offending characteristic of the juror is supported by at least one side's version of the facts. Additionally a court must be entitled to rely on defense counsel's remarks at *voir dire*, which themselves acknowledge that unemployment has some relevance to the case.[1] If the court were to wait until trial to settle the question of Brown's employment, the information naturally would arrive too late to be of any use in assessing the basis of a strike.

## B. Prior Bad Acts

Before trial Brown moved to bar the testimony of four government witnesses, two who would say that Brown bought drugs from them and two who would say that he sold drugs to them. Brown had not been convicted of any crimes in connection with these sales, and was not on trial for them here. The testimony was only meant to establish that if he committed the acts with which he

---

1. During *voir dire* Brown's lawyer asked the members of the panel the following question relating to his client's employment status:

   [D]o you think it's wrong for parent who works to support their adult children? Does anybody think that that automatically raises a question

   mark in your head, well gee, you know, that child, that child of those parents, well he is probably doing something illegal? Does anybody think that, I mean, besides just maybe, you know, other reasons like unemployment or perhaps laziness?

was charged, he committed them intentionally, not inadvertently. Brown argues that the testimony does not satisfy this circuit's rules governing the admissibility of evidence of a defendant's other crimes or bad acts—that is, crimes he has committed other than those with which he is now charged. Perhaps sensing again that the overwhelming weight of authority is against him, Brown also asks us to reconsider the circuit's rules.

Generally, evidence of past bad acts is inadmissible as proof of a defendant's character and propensity to commit crimes; however, under certain conditions prior bad acts may be admitted as proof of an element of a crime, such as intent, if the act demonstrates how the defendant's behavior was purposeful rather than accidental. See Fed. R.Evid. 404(b); *United States v. Beasley,* 809 F.2d 1273, 1278 (7th Cir.1987); 2 Wigmore, Evidence § 3122 (3d ed. 1940) ("the oftener a like act has been done, the less probable it is that it could have been done innocently."). Brown argues that the government's evidence falls below this initial hurdle because he was not claiming to have committed the acts with innocent intentions, but rather he was claiming not to have committed the acts at all. Where, as here, the crime charged does require proof of a defendant's specific intent, circuit law holds that 404(b) evidence will always at least be relevant. *United States v. Liefer,* 778 F.2d 1236, 1243 (7th Cir.1985); *United States v. Chaimson,* 760 F.2d 798, 805 (7th Cir.1985). Evidence of prior bad acts may be admissible in a case where the defendant is accused of committing a crime with a specific intent, despite his concession of intent, if the evidence still satisfies the other conditions of admissibility.

What Brown apparently seeks is for this circuit to abandon its rule and adopt the opposite position—that 404(b) evidence always should be forbidden if a defendant stipulates not to challenge the relevant intent. In support Brown argues that the probative value of the evidence is marginal while the potential for unfair prejudice remains ever present. See Fed.R.Evid. 404(b). Some other circuits have taken Brown's position to a greater or lesser extent. See, e.g., *United States v. Jemal,* 26 F.3d 1267, 1272–73 (3d Cir.1994); *United States v. Taylor,* 17 F.3d 333, 338 (11th Cir.1994); *United States v. Yeagin,* 927 F.2d 798, 800–03 (5th Cir. 1991); *United States v. Figueroa,* 618 F.2d 934, 940 (2d Cir.1980). This circuit, however, has before acknowledged these cases and departed from their reasoning. *Chaimson,* 760 F.2d at 805–06. According to *Chaimson,* even if a stipulation is offered the prosecution has to be allowed to prove its entire case if it so chooses. *Id.* at 805. Of course any party's right to prove its case rather than settle for a stipulation may be limited; "[a] fact may be proved as long as the probative value of the proof still exceeds the prejudicial effect, *taking into account the offer to stipulate.*" *United States v. Allen,* 798 F.2d 985, 1001 (7th Cir.1986) (citation omitted). *See also Yeagin,* 927 F.2d at 802. Brown's argument is academic, however, as he failed to offer a stipulation or other concession of intent, but rather, like the defendants in *Chaimson* and *Liefer,* he made only a general denial of all charges. This is not the same, intent-specific stipulation required by the cases on which Brown relies. See, e.g., *United States v. Ortiz,* 857 F.2d 900, 905 (2d Cir.1988); *see also Chaimson,* 760 F.2d at 805 n. 8; *United States v. Ferrer–Cruz,* 899 F.2d 135, 138–39 (1st Cir.1990). Certainly our own cases are clear—a defendant cannot keep 404(b) evidence out of his case by denying all charges.

Brown next argues that the government's evidence of past crimes does not satisfy the other general requirements of admissibility. Brown contends that evidence of his past drug deals was merely cumulative. Given that other evidence already established intent, Brown complains that the probative value of evidence of his past misdeeds is marginal at best, but meanwhile highly prejudicial. Brown believes that a string of witnesses who say the defendant bought and sold drugs may cause the jury to conclude either that the defendant probably is guilty of at least some crime so they had best convict him, or to suppose the defendant is the sort of person who is predisposed by his prior bad acts to buy drugs. Of course these are forbidden inferences, and upon request the trial court is obliged to so instruct the

jury.[2] *See* Fed.R.Evid. 105; *Huddleston v. United States*, 485 U.S. 681, 692, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988). But these same problems also arise when past convictions are used to impeach a defendant's credibility as a witness—and yet these convictions are allowed. *See e.g., United States v. Alvarez*, 833 F.2d 724 (7th Cir.1987).

In the absence of a categorical rule of the kind Brown urges on us, we must defer to the judgment of the trial court. Trial judges are better positioned than we to assess the likely value and probable effects of testimony. We reverse their judgments only if they reflect an abuse of discretion. *United States v. Beasley*, 809 F.2d 1273, 1278–79 (7th Cir.1987); *United States v. Levy*, 741 F.2d 915, 924 (7th Cir.1984). The judge's decision here was principled; he was persuaded the 404(b) testimony was important to prove intent, and said he was confident that he could cure any unfair prejudice with instructions to the jury. Indeed, despite Brown's decision to deny all charges rather than claim he made innocent mistakes, the prosecution still needed to show that if he was hiding something it was more than just his poor judgment in picking his friends—that it was in fact his own intent to buy drugs for eventual resale. The risk that the 404(b) witnesses here distracted the jury may be present to a limited extent, but the judge's choice to take that course was well within the bounds of his discretion as circumscribed by our many cases allowing this sort of testimony. *See United States v. Maholias*, 985 F.2d 869, 880 (7th Cir.1993); *United States v. Kramer*, 955 F.2d 479, 491 (7th Cir.1992); *cf. Wilson v. City of Chicago*, 6 F.3d 1233, 1236 (7th Cir.1993).

Finally, because his prior drug dealings involved only single buyer seller transactions, Brown argues that these exchanges were not sufficiently similar to the presently-charged, drug conspiracy to survive exclusion under Rule 404(b). Upon examination of this claim we find that Brown has failed to carry his burden of showing clear error in the district court's judgment that a similarity existed between Brown's earlier and current drug activity.

Affirmed.

---

**2.** The trial judge heard all of Brown's arguments before the trial, and ruled that the evidence would be admitted accompanied by the limiting instruction. He also said that he would be willing to revisit the question later at counsel's request, after other evidence had come in. We believe that this last proviso was an appropriate example of how, as a matter of course, a court may proceed when considering 404(b) evidence.