NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 26, 2012
Decided August 15, 2013

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 12-1520

|  |  |
|---|---|
| KATHY HORVATH, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. |
| *v.* | No. 3:10-cv-00180-CAN |
| WEST BEND MUTUAL INSURANCE CO., *Defendant-Appellee.* | Christopher A. Nuechterlein, *Magistrate Judge.* |

## O R D E R

After her home in South Bend, Indiana, burned down in February 2009, Kathy Horvath filed a claim in excess of $1.6 million with her insurer, West Bend Mutual Insurance Company ("West Bend"), for the house and its contents. West Bend denied the claim after determining that the fire was the result of arson: although Horvath was out of town at the time of the conflagration, West Bend asserted that the fire had been set with her consent or authority; it also asserted, *inter alia*, that Horvath had made material misrepresentations regarding the nature and extent of her damages. Horvath sued West Bend for breach of the insurance contract in state court, and West Bend removed the case to federal court on the basis of diversity of citizenship. The case was tried to a jury in 2012; a magistrate judge presided over the trial with the parties' consent. Horvath, of course, was

a key witness at the trial. The jury delivered a general verdict in West Bend's favor and awarded Horvath nothing. Horvath appeals, arguing that the magistrate judge erred in admitting into evidence proof that Horvath had been convicted of embezzlement in 1991 (and sentenced in early 1992), more than 20 years before the trial took place. *See* Fed. R. Evid. 609(b).

Rule 609(a)(2) allows into evidence for purposes of impeachment a witness's prior conviction for a crime involving dishonesty; but the rule sets up different presumptions as to admissibility depending on whether the conviction is less or more than 10 years old. If the conviction is no more than 10 years old, and the crime of conviction had an element of dishonest or false statement, Rule 609(a)(2) renders proof of such a conviction admissible (indeed, commands the admission) without requiring the court to balance its probative worth against its potential for prejudice. *Barber v. City of Chicago*, 2013 WL 3957736, at *11 (7th Cir. Aug. 2, 2013) (citing *United States v. Wilson*, 985 F.2d 348, 351 (7th Cir. 1993)). By contrast, Rule 609(b) allows into evidence a witness's prior conviction "only if . . . its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." The language of Rule 609(b) thus "weighs probative value against prejudice in a way that is dramatically skewed in favor of excluding the conviction evidence; the evidence is inadmissible unless probative value 'substantially outweighs' prejudice." 28 Charles Alan Wright & Victor J. Gold, *Federal Practice & Proc.: Evidence* § 6136, at 290 (2012); *see also* 3 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 6:53 at 401, 404 (3d ed. 2007).

Our review of the decision to admit Horvath's prior conviction is for abuse of discretion, *e.g.*, *United States v. Smith*, 131 F.3d 685, 687 (7th Cir. 1997), and in West Bend's view, because the district court considered each of the five (non-exclusive) factors we identified as relevant to the admission of a prior conviction under Rule 609 in *United States v. Mahone*, 537 F.2d 922, 929 (7th Cir. 1976) (citing *Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967) (Burger, J.)), and properly weighed the probative value of the prior conviction against its potential for prejudice, its decision to admit evidence of the conviction cannot amount to a reversible abuse of discretion, *see United States v. Redditt*, 381 F.3d 597, 601 (7th Cir. 2004). We agree that the court gave the issue thorough consideration and did discuss each of the *Mahone* factors. There is one problem with the court's analysis that is immediately apparent, however. Embezzlement, as the parties agree, is an offense similar to the act at issue here—arson committed with an eye to fraudulently collecting on an insurance policy—in that both involve deceitful conduct. The district court, like West Bend, considered similarity to be a positive rather than a negative factor vis-à-vis the admissibility of the conviction. R. 139 at 20-21; R. 140 at 19-20; West Bend Br. 24. It is

clearly a factor weighing against admission, however: "When the prior conviction and the charged act are of a similar nature, the danger [of unfair prejudice] increases. The jury is more likely to misuse the evidence for purposes other than impeachment, that is, to regard the prior conviction as evidence of a propensity to commit crime or of guilt, despite instructions to the contrary." *United States v. Shapiro*, 565 F.2d 479, 481 (7th Cir. 1977) (citing, *inter alia*, *United States v. Harding*, 525 F.2d 84, 89-90 (7th Cir. 1975) (Stevens, J.)); *see also United States v. Hernandez*, 106 F.3d 737, 740 (7th Cir. 1997); *United States v. Causey*, 9 F.3d 1341, 1344-45 (7th Cir. 1993); *United States v. Rein*, 848 F.2d 777, 783 (7th Cir. 1988); *United States v. Fountain*, 642 F.2d 1083, 1091 (7th Cir. 1981); *Gordon*, 383 F.2d at 940; *Spicer v. Liberty Mut. Ins. Co.*, 2007 WL 2363369, at *2 (S.D. Ind. Aug. 15, 2007) (Hamilton, J.).

Assuming, without deciding, that the district court's error as to the similarity factor —which was a legal error—so tainted the court's overall application of the multi-factor *Mahone* framework, and the balancing of probative value versus prejudice, as to render the decision to admit the conviction an abuse of discretion, *see Moffitt v. Ill. State Bd. of Educ.*, 236 F.3d 868, 873 (7th Cir. 2001), we must still consider whether the error affected Horvath's substantial rights. *See* Fed. R. Civ. P. 61. It did not.

First, as West Bend points out, Horvath's prior conviction was disclosed but not given undue attention at trial. Out of a trial transcript that totaled more than 400 pages, Horvath's counsel spent roughly one page of the trial transcript fronting the basic facts regarding the conviction, R. 143 at 5-6, and West Bend spent another two pages asking her about the conviction on cross-examination, R. 143 at 107-09. We see no sign that the conviction took on any prominence at the trial; Horvath herself professed an inability to recall any of the details regarding the offense (R. 143 at 5). As evidence that Horvath lacked credibility as a witness, other facts took on much more prominence than her conviction did.

Second, and more importantly, even from the cold record, it is clear that Horvath was a poor witness whose credibility was virtually nil by the time she left the stand. As there was no direct evidence of Horvath's involvement in the arson (that the fire was intentionally set was uncontested), and Horvath had little or no objective, documentary proof supporting her claimed losses, her believability as a witness was central to the jury's assessment of her claim against West Bend. To say that her credibility was undermined is to understate the point substantially. We cite the following as an anything-but-exhaustive list of examples:

1.  When asked to acknowledge some fact, including in particular her own prior statements, Horvath had a tendency to respond, non-commitally, "If that's what you're telling me." The transcript is rife with variations on that answer.

2.  Horvath claimed ignorance of, or an inability to recall, facts which were important and that one would expect a witness to remember. For example, although she testified she had only been sued once in her fifteen-year career as a realtor, she claimed to know nothing about the basis for that suit, which resulted in a default judgment in excess of $25,000 (and findings of fact in support of that judgment that were adverse to her) and a lien against her property.  "I honestly don't know because I never showed up in court," she explained.  R. 143 at 95.  Similarly, under questioning from her own attorney about her conviction for embezzlement, she claimed not to recall how she had embezzled money from her employer (a bank) nor how much she had embezzled (more than $57,000), despite her certainty that she had "paid back every last cent."  R. 143 at 6; *see also id.* at 108.

3.  Horvath had filed a bankruptcy petition in August 2007, some 18 months prior to the fire, in which she had valued her house at only $400,000 and her personal property at $1,700 (R. 143 at 93); by contrast, she claimed in the wake of her fire that her house was worth over $1.1 million and that the contents were worth more than $400,000.[1]  At trial, she put the blame squarely on her bankruptcy attorney for the much lower numbers in the bankruptcy petition, testifying that her counsel made those numbers up when she was unable to supply him with accurate information, and that she did not see those figures before he filed the bankruptcy petition, "because I never signed anything." R. 143 at 161; *see also id.* at 230-31.[2]  In fact, Horvath had signed the bankruptcy petition electronically (she then claimed she had given that authorization when she initially met with her counsel, without seeing a schedule of her assets). R. 143 at 218, 229-30.  She also testified at trial that she had withdrawn the bankruptcy petition because she discovered it contained false information about the value of her assets (R. 143 at 94, 161); but previously she had testified that she withdrew it upon receipt of a substantial sales commission (R. 143

---

[1] A number of line items on the list of contents she submitted to West Bend by themselves exceeded the $1,700 total on her bankruptcy petition. *See*, *e.g.*, R. 143 at 163, 167. And whereas the bankruptcy petition indicated that she owned no jewelry, for example, the insurance claim listed a number of jewelry items worth substantial amounts of money – including a Gucci watch valued at $5390, for example. *See* R. 143 at 168-69.

[2] It is, to say the least, surprising, than an experienced real estate saleswoman would have such difficulty supplying her attorney with accurate information about the value of her home, if not its contents.

at 271-72).  For his part, the bankruptcy trustee, in seeking to dismiss the case, had cited Horvath's failure to cooperate with her attorney in providing relevant information as a reason why the petition should not proceed. R. 48 at 2 ¶ 5; 143 at 171-72.

4.  At her June 2011 deposition, Horvath testified that she had filed her 2008 income tax return and that it was true and accurate. R. 143 at 149.  Her attorney subsequently produced a copy of that return to West Bend in July 2011.  The return was dated April 15, 2009. R. 143 at 149.  At trial, however, Horvath testified that she had not, in fact, filed that return as of April 2009 or even as of the time her deposition was taken in 2011. R. 143 at 176-77.  Moreover, although she subsequently made other corrections to her deposition testimony upon review of the transcript, she had not corrected her testimony on that point. R. 143 at 179.  She acknowledged that she had given a copy of the return to her attorney for production to West Bend without telling him that the return had not been filed.  She at one point claimed, incredibly, that she had put an April 2009 date on the return because she thought that is what West Bend wanted her to do!  R. 143 at 232.  She then, on prompting by her counsel, corrected herself to say that she used that date in an effort to avoid a penalty for a late return. R. 143 at 233-34.

5.  Horvath contradicted herself on a number of important points which bore on her possible complicity in the arson.  For example, at trial, she denied being treated for depression at the time of the fire, but previously had acknowledged that she was. R. 143 at 132-33.  At trial she admitted that there may have been some gasoline in the basement of the home at the time of the fire; previously she had denied that possibilty. R. 143 at 188-89. And, at trial, she indicated that her neighbors would not necessarily have heard her security alarm going off if someone broke into the house on the night of the fire; but on a prior occasion, she expressed confidence that they would have heard the alarm.  R. 143 at 186-88.

6.  During discovery, when asked to identify banks holding her business accounts, she had identified at least two banks which advised that they had no record of such an account, and had failed to name one bank which held her business escrow account. R. 143 at 138-39, 152-53.

Even Horvath must have realized how little credibility she had left once these and countless other blots on her trustworthiness had been laid bare before the jury.  Near the end of a methodical and relentless examination by West Bend's attorney, when her prior

statement as to a particular item on her insurance claim was held up to once again contradict her testimony in court, an exasperated Horvath declared to counsel, "You're an evil man."  R. 143 at 200.

In short, we do not believe that the admission of Horvath's conviction, even if it was erroneous, affected Horvath's substantial rights.  There is no significant chance that the error affected the jury's verdict, *see*, *e.g.*, *Barber*, 2013 WL 3957736, at *12, given the many other blemishes on her credibility.  The judgment in favor of West Bend is therefore AFFIRMED. The parties shall bear their own costs of appeal.