In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-3527

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ARTHUR T. CONNER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 3:07-cr-00031-JCS-3—**John C. Shabaz**, *Judge.*

ARGUED SEPTEMBER 15, 2008—DECIDED OCTOBER 22, 2009

Before KANNE, EVANS, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* On March 8, 2007, a grand jury indicted Defendant Arthur T. Conner for distributing more than five grams of cocaine base (crack cocaine) in a controlled drug buy on December 20, 2006. During Conner's jury trial, the government presented testimonial evidence regarding Conner's participation in a drug sale on January 10, 2007, and his prior history of drug

dealing with co-defendants Michael Hughes and Darrick Robison. The district court admitted this evidence because it found that these acts were intricately related to the charged crime. The court did not address the government's alternative argument that the evidence was admissible under Federal Rule of Evidence 404(b). The jury convicted Conner, who was sentenced to life in prison. Conner appeals his conviction, arguing that the district court erred in admitting this evidence, as well as in providing the jury with an aiding and abetting instruction. Alternatively, Conner requests a limited remand for resentencing in light of *Kimbrough v. United States*, 552 U.S. 85 (2007). We affirm Conner's conviction and remand for resentencing.

## I. BACKGROUND

The facts of the controlled buy for which Conner was convicted are relatively straightforward. On December 20, 2006, FBI informant Abdul Harriel met with Officer Aaron Dammen of the Janesville Police Department, who searched him, fitted him with a transmitting device, and gave him money to fund the transaction. Harriel then called Michael Hughes[1] to arrange for the purchase of a quarter-ounce of crack cocaine. Hughes told Harriel that while he did not have that much crack,

---

[1] Throughout the opinion, "Hughes" refers to Michael Hughes. His brother Vernon Hughes, who played a more passive role in the transaction, is referred to by his full name only.

he knew someone who did—Conner. Hughes directed Harriel to meet him later that day at Connor's residence, 700 West Grand Avenue in Beloit.

When Harriel arrived at the location, he got into the backseat of Hughes's car. Hughes was seated in the driver's seat, and Vernon Hughes, whom Harriel did not know, was in the passenger's seat. The three waited for several minutes before Conner pulled up behind them, exited his car, and entered Hughes's car. Harriel gave cash to Hughes, who passed it to Conner, and Conner handed a brown paper bag to Harriel. Following the transaction, Harriel returned to the safe site, where he turned over the paper bag to Officer Dammen. Later inspection revealed that the bag contained 5.737 grams of crack cocaine.

Throughout the transaction, a police surveillance team, including Officer Dammen, monitored the activities from a nearby van. Officer Dammen's account of events was consistent with the version presented by Hughes and Harriel, although Dammen did not mention seeing another individual in the passenger's seat of Hughes's car.

A few weeks later, on January 10, 2007, Harriel participated in another controlled buy for Officer Dammen. On that day, Harriel called Conner to again purchase crack cocaine. Conner said he could sell Harriel the crack, but he never called Harriel back with details, so Harriel then called Michael Hughes. Hughes agreed to supply the crack, and told Harriel to pick him up at 700 West Grand Avenue.

The interactions among Hughes, Conner, and Robison, who ultimately supplied the crack to Harriel on January 10, are somewhat unclear from the testimony. In essence, the record reflects that Robison was holding three "eight-balls" of crack cocaine for Conner and at some point, Conner directed Robison to provide Hughes with the crack. During this time, arrangements were made for Hughes and Robison to meet at a drug store on Harrison in Beloit for the exchange.

Harriel picked up Hughes and they went to the drug store where the exchange was to take place. When they arrived, Robison got into the car, where he sold the crack to Harriel. Harriel then returned to the safe site and gave the drugs to Officer Dammen.

On March 8, 2007, a grand jury returned a three-count indictment against Hughes, Robison, and Conner. Conner was only named in Count One of the indictment, which charged Conner and Hughes with distributing more than five grams of cocaine base on December 20, 2006. Count Two charged Hughes and Robison with distributing more than five grams of cocaine base on January 10, 2007, and Count Three charged Hughes with distributing more than five grams of cocaine base on January 18, 2007. Hughes and Robison pled guilty and agreed to cooperate with the government, and Conner chose to go to trial.

Before Conner's trial, the government gave notice that it intended to produce a significant amount of "other acts" evidence related to Conner's drug history, including testimony regarding the January 10 transaction and

evidence of Conner's prior drug relationships with Hughes and Robison. The government argued that the evidence was intricately related to the crime charged in the indictment or, alternatively, that the evidence was admissible under Rule 404(b), as it tended to show knowledge, intent, and a common scheme or plan. Over Conner's objection, the district court admitted the evidence under the "intricately related" doctrine. The court did not address the Rule 404(b) issue.

At trial, the government presented numerous witnesses who testified to the events of December 20 and January 10. The government also introduced evidence regarding Conner's prior drug dealings with Hughes and Robison. Hughes testified that he and Conner started dealing drugs together in 1995, and that Conner dealt crack cocaine out of his residence at 700 West Grand Avenue. He also described how Conner would "rock up" or prepare the crack cocaine and how much money Conner typically received from these drug sales. Robison testified that he started working for Conner as a middleman in 2006. Conner directed Robison to make drug pickups and deliveries of cocaine, and he supplied Robison with money to buy product to sell to customers. Robison also testified that because he had a driver's license, he drove Conner to Rockford to purchase cocaine and obtained rental cars to use in their drug transactions.

Conner did not present any evidence to rebut the government's version of events. Instead, Conner's counsel attempted to establish reasonable doubt by challenging the credibility of the government's witnesses and

arguing that the testimony presented at trial left open the possibility that Michael or Vernon Hughes, not Conner, supplied the crack cocaine on December 20, 2006.

The district court gave the jury the following instruction regarding aiding and abetting:

> Any person who knowingly aids, abets, counsels, commands, induces, or procures the commission of a crime is guilty of that crime. However, the person must knowingly associate himself with the criminal venture, participate in it in trying to make it succeed.

Conner never objected. In fact, during the charging conference Conner expressed his preference for this instruction. At that conference, the district court reviewed two potential aiding and abetting instructions, and both Conner and the government agreed that one would suffice. The judge chose the above instruction and asked if there was any objection. Conner's counsel replied that this instruction "better states the case." Until this appeal, Conner never maintained that it was improper to instruct the jury on aiding and abetting.

The jury found Conner guilty, and the court held a sentencing hearing on October 9, 2007, prior to the Supreme Court's decision in *Kimbrough*. Conner's counsel noted that "[the 100:1 crack-to-powder ratio is] up for review in the Supreme Court so we do want to preserve that issue for appeal." The district court sentenced Conner to life in prison without commenting on the 100:1 ratio.

## II. ANALYSIS

On appeal, Conner argues that the district court erred in admitting evidence of the January 10 sale and of his prior drug dealings with Hughes and Robison. He also asserts that the court erred in instructing the jury on aiding and abetting. Conner maintains that even if each of these errors was harmless in isolation, their cumulative effect resulted in severe prejudice, necessitating a new trial. In the alternative, Conner asks this court to remand this case to the district court for resentencing in light of the Supreme Court's recent decision in *Kimbrough*. We address each issue in turn.

### A. *Evidence of Conner's "Other Bad Acts"*

At Conner's trial, the government presented evidence of Conner's "other bad acts" under two alternative theories of admissibility: Rule 404(b) and the "intricately related" doctrine. The district court admitted the evidence, concluding that both the January 10 sale and Conner's prior drug dealings with Hughes and Robison were intricately related to the charged crime. The court did not address the government's alternative argument that it was admissible under Rule 404(b). Conner challenges this ruling, arguing that the evidence was not intricately related to the December 20 drug transaction, that it was improper propensity evidence that does not meet the requirements of Rule 404(b), and that it was unduly prejudicial.

We review the district court's evidentiary rulings for an abuse of discretion, including its decision to admit

"other acts" evidence under the "intricately related" doctrine or Rule 404(b). *United States v. Harris*, 536 F.3d 798, 807 (7th Cir. 2008). We will not, however, grant a new trial where an error was harmless, that is, where it did not affect the outcome of the trial. *United States v. Ortiz*, 474 F.3d 976, 982 (7th Cir. 2007), *cert. denied*, 128 S. Ct. 51 (2007).

Rule 404(b) provides that evidence of a defendant's "other bad acts" is not admissible to show the character of a defendant or his propensity to commit the charged crime. *United States v. Chavis*, 429 F.3d 662, 667 (7th Cir. 2005). This evidence may, however, be admissible for other purposes, such as knowledge, intent, or absence of mistake. *Id.*

Notwithstanding Rule 404(b), this court has long held that evidence of prior bad acts is admissible when the acts are so inextricably intertwined with, or intricately related to, the charged conduct that they help the fact-finder form a more complete picture of the crime. *United States v. Samuels*, 521 F.3d 804, 813 (7th Cir. 2008). Courts admit this evidence because the acts in question are intrinsic to the charged crime, and are not "other acts" within the meaning of Rule 404(b). *See United States v. Luster*, 480 F.3d 551, 556 (7th Cir. 2007). In other words, evidence admitted under this doctrine "lie[s] outside the purview of the Rule 404(b) character/propensity prohibition," *id.*, and is not subject to its con-straints regarding the manner in which the evidence may be used, *see United States v. Bowie*, 232 F.3d 923, 928 (D.C. Cir. 2000) (noting that inextricable intertwinement evi-dence is admissible "for all purposes notwithstanding its

bearing on character"); *see also United States v. Owens*, 424 F.3d 649, 655 (7th Cir. 2005) ("Evidence of other acts which are 'intricately related to the facts of the case' is admissible without reference to Rule 404(b) . . . ."). However, as with any theory of admissibility, evidence admitted under the "intricately related" doctrine must pass muster under Rule 403—its probative value must not be substantially outweighed by its risk of unfair prejudice. *Samuels*, 521 F.3d at 813.

In recent cases, we have noted that although many cases recite the "intricately related" formula, the doctrine is often "unhelpfully vague." *See, e.g.*, *United States v. Taylor*, 522 F.3d 731, 734 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 190 (2008). Because almost all evidence admitted under this doctrine is also admissible under Rule 404(b), there is often "no need to spread the fog of 'inextricably inter-twined' over [it]." *Id.* at 735. As a result, we have recently upheld district court rulings on the basis of Rule 404(b) without resorting to the "intricately related" doctrine. *See Harris*, 536 F.3d at 807-08; *United States v. Fleming*, 290 Fed. App'x 946, 948-49 (7th Cir. 2008).

As we discuss below, the district court improperly admitted evidence of Conner's other acts under the "intricately related" doctrine. Although evidence of Conner's other acts would indeed have been admissible under Rule 404(b), the district court's decision to admit the evidence under the "intricately related" doctrine raises some concerns in this case that were not present in our recent decisions. Namely, because evidence admitted under the "intricately related" doctrine is not

subject to the constraints of Rule 404(b), the court did not limit the purposes for which the jury could consider the evidence. Indeed, unlike in *Harris*, several arguments in the district court focused on implications of the evidence that are beyond the scope of the Rule 404(b) exceptions. Therefore, we must address each theory of admissibility, and apply Rule 403 to balance any risk that the evidence was used for an improper purpose against its probative value.

## 1.  *Admissibility Under the "Intricately Related" Doctrine*

Evidence of other bad acts is admissible when those acts are so intricately related to the charged conduct that they help the jury form a more complete picture of the crime. *Samuels*, 521 F.3d at 813. Under this "intricately related" doctrine, courts have admitted evidence that is necessary to fill a conceptual or chronological void, or that is "so blended or connected that it incidentally involves, explains the circumstances surrounding, or tends to prove any element of, the charged crime." *Id.* (quotation omitted); *see also, e.g.*, *United States v. McLee*, 436 F.3d 751, 760 (7th Cir. 2006).

The district court allowed the government to present evidence of Conner's "other bad acts" without limitation under the "intricately related" doctrine. At trial, the government not only presented this evidence to the jury, but it also argued in closing that this evidence was relevant toward proving that Conner distributed drugs on December 20. The government maintains this

evidence was relevant to the element of distribution because it provided the jury with a more complete picture of the crime. The government contends that Conner's prior history of selling crack cocaine with Hughes and Robison helped the jury to understand the relationships among the co-conspirators and provided context for the charged transaction, and that the January 10 sale demonstrated to the jury that the charged conduct was not isolated. (See Resp't Brief 21-22, 24.) This type of use, the government argues, was proper under the "intricately related" doctrine. We find these arguments unpersuasive.

With respect to Conner's relationship with Hughes and Robison, the government relies on several cases in which we have upheld the admission of evidence under the "intricately related" doctrine to help explain the relationship among co-conspirators. *See, e.g.*, *Luster*, 480 F.3d at 557 (holding that the admitted evidence "helped the jury piece together the contours of the charged conspiracy and the relationships among its actors"); *McLee*, 436 F.3d at 760 ("Here, Turner's testimony helped to complete the story of how the conspiracy between Turner and McLee began and filled what would otherwise have been a chronological and conceptual void in the jury's understanding of the genesis and nature of their relationship."). But the defendant in each of those cases was actually charged with conspiracy, *see Luster*, 480 F.3d at 556; *McLee*, 436 F.3d at 760, and for the jury to determine whether a conspiracy existed, it was imperative that it understood the relationships among the parties.

In contrast, the government here did not need to prove that Conner had a relationship with Hughes and Robison to show that Conner distributed drugs on December 20. Conner was not charged with conspiracy, nor was he charged with selling the drugs on behalf of one of his co-defendants. *Cf. United States v. Simpson*, 479 F.3d 492, 501 (7th Cir. 2007) (noting that the justifications for the "intricately related" doctrine were not applicable when the defendant was not charged with conspiracy, for a series of transactions, or for selling drugs on another's behalf). It was not necessary for the jury to understand the relationships among the co-conspirators to determine if Conner had in fact distributed drugs on that day.

Similarly, it was unnecessary for the jury to consider the January 10 sale to understand the events of December 20. Without this evidence, "it would not have occurred to [the jurors] that they were missing anything or have made any of the other evidence in the case unintelligible." *United States v. Paladino*, 401 F.3d 471, 475 (7th Cir. 2005). Thus, the government's comment to the jury that the January 10 buy helped to corroborate the December 20 buy did nothing to clarify the jurors' understanding of the charged conduct.

Our decision in *Simpson* is instructive on this point. In *Simpson*, we held that evidence of a defendant's prior drug transactions was not admissible under the "intricately related" doctrine when he was on trial for an isolated drug sale. 479 F.3d at 500-02. As we noted in that case:

> [The defendant] was on trial for only one delivery, on one day, to one person. Evidence of any prior unrelated drug sales was simply not necessary to complete the story of the single delivery on trial. Nor was it needed to avoid a conceptual or chronological void in the story of the [charged] delivery.

*Id.* at 501.

The reasoning of that case applies to Conner as well. The January 10 sale in no way helped to "complete the story" of the December 20 sale, nor did it provide the jury with a more complete picture of the charged crime than it would have had absent the evidence. The government simply needed to show that Conner distributed drugs to Harriel on the day in question. The January 10 drug sale was unnecessary to establish that fact.

The "complete the story" theory of the "intricately related" doctrine was not meant to be used, as it was in this case, to circumvent Rule 404(b) and allow the government to use evidence of other acts to show character and propensity. *Cf. Taylor*, 522 F.3d at 734 ("[T]he 'complete the story' definition of 'inextricably intertwined' threatens to override Rule 404(b). A defendant's bad act may be only tangentially related to the charged crime, but it nevertheless could 'complete the story' or 'incidentally involve' the charged offense or 'explain the circumstances.'"); *Bowie*, 232 F.3d at 929 ("Such broad exclusions have no discernible grounding in the 'other crimes, wrongs, or acts' language of the rule. Rule 404(b) . . . should not be disregarded on such a flimsy basis.").

Instead, courts admit this evidence because the acts in question are intrinsic to the charged crime, and are not other acts within the meaning of the rule. *See Luster*, 480 F.3d at 556 (explaining that acts that are "inextricably intertwined" are outside of Rule 404(b), because that rule applies only to "other" crimes, wrongs, or acts); *United States v. Ramirez*, 45 F.3d 1096, 1102 (7th Cir. 1995) ("[E]vidence concerning the chronological unfolding of events that led to an indictment, or other circumstances surrounding the crime, is not evidence of 'other acts' within the meaning of Fed. R. Evid. 404(b).").

The way the district court allowed the government to use this evidence against Conner does not pass muster under this reasoning. The January 10 drug sale and Conner's other drug activities were not intrinsic to the charged crime. They were separate transactions that took place at separate times. This falls squarely within the types of "other acts" contemplated by Rule 404(b). Accordingly, it was improper for the government to use these acts to show Conner's propensity to commit the charged crime.

We therefore find that the district court abused its discretion in allowing the evidence to be admitted for such a broad purpose under the "intricately related" doctrine. However, we must determine whether the evidence could have been properly admitted under Rule 404(b) in order to determine whether this error prejudiced the defendant.

2. *Admissibility Under Rule 404(b)*

Rule 404(b) provides that evidence of other bad acts is not admissible to show that a defendant has the propensity to commit a crime. *Chavis*, 429 F.3d at 667. This evidence may be admissible for other purposes, however, such as knowledge, intent, or absence of mistake. *Id.* In determining whether evidence is admissible under Rule 404(b), we examine whether:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the evidence has probative value that is not substantially outweighed by the danger of unfair prejudice.

*United States v. Diekhoff*, 535 F.3d 611, 617 (7th Cir. 2008). We find that the evidence of Conner's other drug activities and his relationship with Hughes and Robison satisfies this test and therefore was admissible under Rule 404(b).

In drug cases, we have often found a defendant's other drug transactions relevant for purposes other than propensity, such as knowledge, intent, and lack of mistake. *See, e.g.*, *Chavis*, 429 F.3d at 668-70; *United States v. Hatchett,* 245 F.3d 625, 643 (7th Cir. 2001); *United States v. Wilson*, 31 F.3d 510, 515 (7th Cir. 1994). In *Wilson*, for example, we noted that evidence of other drug activity "tend[ed] to show that [the defendant] was

familiar with the cocaine business and was not some innocent bystander mistakenly caught up in an over-zealous law enforcement." 31 F.3d at 515 (quotation omitted).

Evidence of Conner's other drug activity is similarly probative here. Although Conner argued both at trial and on appeal that he was not present at the scene of the crime, Conner's counsel indicated otherwise in his opening statement:

> Mr. Conner's presence at the scene of the crime is not sufficient to establish his guilt. . . . You will learn that the police could not see with their own eyes what was going on that day. They were doing surveillance but they couldn't see what Mr. Conner gave to Michael Hughes that day.

(Tr. at 105). By arguing that Conner was merely an innocent bystander, Conner's counsel opened the door to the government's introduction of contrary evidence.

Conner's relationship with Hughes and his extensive history of prior drug activities tended to show that Conner was not simply an innocent bystander. *See United States v. Hurn*, 496 F.3d 784, 787 (7th Cir. 2007) ("A prior conviction is also relevant when the defendant concedes being in the vicinity of drug activity but argues that he was a 'clueless bystander.'"); *United States v. Macedo*, 406 F.3d 778, 793 (7th Cir. 2005) (allowing evidence of other drug activity when defendant maintained he had nothing to do with a drug conspiracy and was only at the airport by "happenstance"). This evidence has probative value that fits comfortably within the express exceptions of Rule 404(b).

Nonetheless, Conner argues that the evidence of his other drug transactions is not directed toward a matter at issue because he does not contest the elements of knowledge and intent, but instead maintains that he did not commit the crime at all. We have repeatedly rejected similar arguments in other cases. *See, e.g.*, *Hatchett*, 245 F.3d at 643; *United States v. Brown*, 34 F.3d 569, 573 (7th Cir. 1994); *United States v. Mazzanti*, 888 F.2d 1165, 1171 (7th Cir. 1989). For instance, in *Mazzanti*, we held that where a defendant conceded that he was near the location where the cocaine sales occurred but denied any wrongdoing, the government was free to introduce evidence to establish intent. 888 F.2d at 1171. We reached this result because, as we have often noted, intent is automatically at issue for specific intent crimes. *Id.*; *see also United States v. Best*, 250 F.3d 1084, 1091 (7th Cir. 2001); *Brown*, 34 F.3d at 573.

Conner attempts to distinguish his case from those where we have held that knowledge and intent were always at issue by noting that he did not argue at trial that he was merely a bystander to criminal activity, but claimed that he was not near the scene of the crime at all. Even if counsel's remarks during his opening statement did not foreclose Conner's argument here, we have frequently held that intent is always at issue in specific intent crimes even in the absence of an "innocent bystander" defense. *See, e.g.*, *United States v. Ross*, 510 F.3d 702 (7th Cir. 2007); *United States v. Brown*, 250 F.3d 580, 584 (7th Cir. 2001). Even in cases where the defendant has offered to stipulate to intent as an element of the crime, we have held that the government must be allowed to prove its entire case if it so chooses. *See Brown*, 34 F.3d at

573 (citing *United States v. Chaimson*, 760 F.2d 798, 805 (7th Cir. 1985)).

Furthermore, a blanket denial of wrongdoing is meant to negate all elements of the crime. *See Mazzanti*, 888 F.2d at 1171. Therefore, it is proper for the government to overcome an absolute denial by establishing each element. By pleading not guilty to the charge and denying any wrongdoing, Conner placed the burden on the government to prove each element of the crime beyond a reasonable doubt. *See United States v. Gougis*, 432 F.3d 735, 743 n.4 (7th Cir. 2005). The government is not relieved of its burden of proving an element simply because Conner did not challenge it. *See Brown*, 34 F.3d at 573. To hold otherwise would be to tie the hands of the government in meeting its burden of proof where no defense was presented on an element, or indeed, an entire charge. *Cf. Gougis*, 432 F.3d at 743 n. 4 (noting that the government retained the burden of proof on all elements of the crime even where the defendant did not "fully contest" one of the charged crimes at trial). Thus, we find that the evidence of Conner's previous drug transactions was properly directed at an issue other than his propensity to commit the crime.

Likewise, Conner's argument that the evidence was not sufficiently similar or close in time to qualify under Rule 404(b) is unavailing. The evidence of Conner's relationship with Hughes and Robison shows an ongoing drug operation used to distribute crack cocaine. Conner repeatedly used Hughes and Robison to facilitate transactions in the years leading up to the transaction at issue. The January 10 sale was under similar circum-

stances as the charged crime and was just a few short weeks later. Even though Conner was not present on January 10, Robison testified that he sold the eight-balls pursuant to Conner's instructions. All of these events took place within a few years and involved the same characters and similar activities. Accordingly, we find this evidence sufficiently similar and close in time to the December 20 sale to be admissible under Rule 404(b).

Conner also claims that the government has failed to satisfy the third prong of our Rule 404(b) test—whether the evidence was sufficient to support a jury finding that Conner committed the other acts. We disagree. The testimony of Hughes and Robison was consistent. Both knew details of Conner's drug operation, including where he bought and sold the crack cocaine. Conner provided no evidence at trial to contradict their testimony. Although he did question their credibility, their testimony was sufficiently detailed and consistent that it could certainly support a jury finding that Conner committed these acts.

Because the evidence of Conner's other acts was directed toward a matter in issue other than propensity, was sufficiently similar and close in time to the charged crime, and was sufficient to support a jury finding, it is admissible under Rule 404(b) unless the risk of unfair prejudice substantially outweighs its probative value. This fourth prong of our test recognizes that permissible uses of other bad acts may have the impermissible side effect of allowing the jury to infer propensity. *See Chavis*, 429 F.3d at 667.

We cannot say that, had the evidence been properly admitted under Rule 404(b) instead of the "intricately related" doctrine, the probative value of this evidence would have been substantially outweighed by its risk of prejudice. As noted above, this evidence is highly probative of Conner's claimed innocent bystander status. Had the district court admitted the evidence under Rule 404(b), it could have limited the prejudicial impact by instructing the jury to consider the evidence only for knowledge and intent. The fact that the district court did not limit the use of the evidence does create a risk of unfair prejudice, which we discuss in detail below in the context of Rule 403. However, as a threshold matter, nothing about the evidence is so inflammatory that it would render the evidence inadmissible under Rule 404(b) altogether.

3.  *The Effect of Admitting the Evidence Under the "Intricately Related" Doctrine Rather Than Rule 404(b)*

Although the evidence would have been admissible under Rule 404(b), the district court did not admit it under that theory. Instead, the court improperly relied on the "intricately related" doctrine. As previously noted, in recent cases where either theory was applicable, we have simply upheld the district court's decision on Rule 404(b) grounds instead of resorting to the murky "intricately related" doctrine. *See, e.g.*, *Harris*, 536 F.3d at 807-08; *Fleming*, 290 Fed. App'x at 948-49. For example, in *Harris*, we noted that evidence of the defendant's previous drug activities was necessary for the govern-

ment to show intent to distribute the drugs, his knowl-edge of the drugs, and the absence of mistake. 536 F.3d at 808. The government also needed to introduce evidence of the history between the defendant and a co-conspirator to rebut the defendant's efforts to downplay his role in the charged conspiracy. *Id.* The district court provided a limiting instruction to the jury, and allowed it to consider the evidence for only these limited pur-poses. *Id.* at 804. Therefore, we held that this evidence was admissible under Rule 404(b), and there was no need to "spread the fog" of the "intricately related" doctrine over the case. *Id.* at 808.

Similarly, in *Fleming*, we held that the admitted evidence fit squarely within the intent exception of Rule 404(b). 290 Fed. App'x at 948-49. We noted that the district court repeatedly instructed the jury that it could not consider the evidence for any purpose other than intent and knowl-edge. *Id.* at 949. Thus, as in *Harris*, there was no need to resort to the "intricately related" doctrine.

In each of these cases, the government's use of the evidence fit squarely within the confines of Rule 404(b). In some cases, however, the theory of admissibility may affect the government's use of the evidence. *See Bowie*, 232 F.3d at 928 ("[T]reating evidence as inextricably intertwined not only bypasses Rule 404(b) and its attendant notice requirement, but also carries the implicit finding that the evidence is admissible for all purposes notwithstanding its bearing on character, thus eliminating the defense's entitlement, upon request, to a jury instruction."). This is because evidence admitted

under this doctrine "lie[s] outside the purview of the Rule 404(b) character/propensity prohibition," *Luster*, 480 F.3d at 556, and is not subject to its constraints, *see Owens*, 424 F.3d at 655.

Indeed, the difficulty in Conner's case is in the way the district court allowed the jury to consider this evidence. Unlike in *Harris* and *Fleming*, the district court did not limit the jury's consideration of the evidence to uses that would have been proper under Rule 404(b). In fact, the government repeatedly used the evidence in ways that would be impermissible under the Rule's character/propensity prohibition. For example, when discussing whether Conner distributed drugs on December 20, the prosecutor explicitly pointed out to the jurors that Conner *repeated* the charged conduct by supervising the sale of January 10. The prosecutor also used this evidence to show that the December 20 sale was not an "isolated incident," and noted that the second buy corroborated the first buy.

The implication of the prosecutor's argument was that Conner was more likely to have distributed drugs on December 20 because he had done so on other occasions. Put differently, the prosecutor was showing that Conner had a *propensity* to distribute drugs, which made it more likely that he was guilty of the charged crime. Although this may be true, it is nonetheless prohibited by Rule 404(b). *See United States v. Wright*, 901 F.2d 68, 70 (7th Cir. 1990) ("The implication was that a drug dealer is more likely than someone who is not a drug dealer to sell drugs . . . . No doubt this is true."). As we have previously

noted, "[t]he inquiry into previous criminal acts is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Id.* (quoting *Michelson v. United States*, 335 U.S. 469, 475-76 (1948)). Despite the fact that the evidence may be relevant, this is precisely the type of propensity argument that we have rejected in the context of Rule 404(b). *See id.*

Thus, although the evidence of Conner's "other bad acts" was properly admissible under Rule 404(b), the district court erred in allowing the government to use the evidence to show propensity. We must therefore determine whether the risk of unfair prejudice resulting from this broad use of the "other acts" evidence outweighed its probative value.

4.   *Rule 403*

Even otherwise admissible evidence may be excluded if the danger of unfair prejudice substantially outweighs its probative value. Fed. R. Evid. 403. Evidence is unfairly prejudicial if it induces the jury to decide the case on an improper basis rather than on the evidence presented. *United States v. Pulido*, 69 F.3d 192, 201 (7th Cir. 1995). Such improper grounds include implying that a defendant's other bad act raises the odds that he did the bad act now charged. *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Thus, there is no question that pro-

pensity is an improper basis of conviction and is subject to analysis under Rule 403. *Id.* at 181-82.

As we noted above, the district court improperly allowed the government to use the evidence of Conner's other bad acts to imply his propensity to distribute cocaine on December 20. This created some risk that the jury inferred that Conner distributed drugs on this occasion because he had done so in the past. However, this risk of unfair prejudice is diminished by the fact that the error was relatively harmless because it is unlikely to have affected the outcome of the case. *See United States v. Harris*, 271 F.3d 690, 699 (7th Cir. 2001) (noting that when assessing the impact of an improper comment by a prosecutor, a conviction will not be reversed unless the error likely affected the outcome).

An error is harmless when the reviewing court is convinced that the jury would have convicted even absent the error. *Ortiz*, 474 F.3d at 982. In Conner's case, the jury was provided with ample additional evidence that Conner distributed drugs on December 20. Both Hughes and Harriel testified to Conner's participation in the drug sale. Furthermore, even though Conner claimed he was not present at the scene of the crime, Officer Dammen and the surveillance team witnessed Conner entering the car. Dammen observed that Hughes and Harriel had waited in the car for some time before Conner approached, but drove away after he left. This leads to the natural inference that Hughes and Harriel waited for Conner because it was Conner who brought the drugs.

Moreover, Conner presented no evidence to rebut the government's version of events. While this cannot give rise to an adverse inference, it is useful in determining whether the error was harmful. *Taylor*, 522 F.3d at 735 ("No adverse inference can be drawn from his failure to testify, but a defendant's failure to present any evidence at all can help support a finding of harmless error."). Thus, the jury could easily have concluded that Conner distributed drugs to Harriel on December 20 even without the prosecutor's improper propensity arguments. Because the error was harmless, any risk of unfair prejudice was minimal.

Furthermore, the evidence was extremely probative. The government was required to show that Conner knowingly and intentionally distributed drugs. As previously noted, the fact that Conner had a prior relationship with Hughes and Robison and that he had engaged in similar transactions showed that he knew a drug transaction was occurring and intended to partake in it. Likewise, it showed that he was not simply present at the scene by mistake. Thus, the evidence was highly relevant and probative to show intent, knowledge, and absence of mistake.

Although the district court erred in admitting the evidence under the "intricately related" doctrine and allowing the jury to consider the evidence for a broader purpose, such error was harmless and the risk of unfair prejudice was minimal. The evidence could have been admitted under Rule 404(b), and the jury was presented with ample non-propensity evidence that Conner

distributed drugs on the day in question. Therefore, the risk of unfair prejudice does not substantially outweigh the probative value of the evidence and a new trial is not warranted.

## B.  The Jury Instruction Regarding Aiding and Abetting

Conner next argues that the district court erred in instructing the jury on aiding and abetting even though he was not charged with conspiracy or aiding and abetting the commission of a crime. He argues that this instruction was so confusing and misleading that it deprived him of his right to due process and constituted plain error.

Conner incorrectly assumes that we can review the district court's determination for plain error. He neglects to address the fact that our ability to address this issue hinges on the difference between waiver and forfeiture:

> Waiver occurs when a criminal defendant intentionally relinquishes a known right. Forfeiture occurs when a defendant negligently fails to assert a right in a timely fashion. Waiver of a right extinguishes any error and precludes appellate review, whereas forfeiture of a right is reviewed for plain error.

*United States v. Brodie*, 507 F.3d 527, 530 (7th Cir. 2007) (citations omitted).

Here, Conner did not merely fail to object to the court's instruction regarding aiding and abetting. During the charging conference, Conner's counsel expressly stated

that she preferred this aiding and abetting instruction over the alternative. At no time in this discussion did she indicate that she objected to instructing the jury on aiding and abetting at all. We addressed this precise issue in *United States v. Griffin*, 84 F.3d 912 (7th Cir. 1996). In that case, we noted that "[t]he district court made it clear that it contemplated offering one of the two proposed instructions and asked the defendants for their input. At this point, it was incumbent upon counsel to voice any objections to either or both of the proposals." *Id.* at 924. We then held that a statement of preference for one jury instruction amounted to a voluntary affirmative waiver and extinguished all appellate review. *Id.*

This case is indistinguishable from *Griffin*. Conner's counsel expressed a clear preference for this aiding and abetting jury instruction without indicating any objection whatsoever. As in *Griffin*, this constitutes an affirmative waiver and extinguishes all error. Thus, Conner has no right to seek appellate relief and we cannot review the district court's decision for plain error or otherwise.

### C. Cumulative effect

Even errors that are individually harmless, when taken together, can prejudice a defendant and violate his right to due process of law. *United States v. Allen*, 269 F.3d 842, 847 (7th Cir. 2001). Conner argues that the cumulative effect of admitting the other bad acts testimony and instructing the jury on aiding and

abetting was so prejudicial that he was unable to get a fair trial.

In order for the cumulative effect doctrine to apply, the plaintiff must first show that more than one error occurred. *Id.* In this analysis, courts consider errors that were preserved for appellate review and plain errors. *Alvarez v. Boyd*, 225 F.3d 820, 825 (7th Cir. 2000). Conner's argument fails because only one error applies to this analysis: the district court's admission of the "other acts" evidence under the "intricately related" doctrine. The issue of the aiding and abetting jury instruction was neither preserved for appellate review nor plain error.

As we noted above, Conner did not preserve his argument regarding the aiding and abetting jury instruction for appellate review. Conner affirmatively expressed his preference for this particular jury instruction, thus waiving his argument that it was altogether improper to instruct the jury on aiding and abetting liability. Moreover, even if the district court erred in its instruction, any potential error was not plain. We cannot say that "but for the [instruction], the outcome of the trial probably would have been different." *See id.* The jury heard first-hand testimony that Conner himself distributed drugs on December 20, and did not need to resort to the aiding and abetting theory to find Conner guilty. Thus, it is unlikely that this instruction had any effect on the jury's verdict, and giving the instruction did not constitute plain error. Because there was only one error, there can be no cumulative error, and we reject Conner's argument.

*D.  Resentencing in light of* Kimbrough

After Conner's sentencing, the Supreme Court in *Kimbrough* held that like the rest of the Sentencing Guidelines, the 100:1 crack-to-powder ratio is advisory, not mandatory. 552 U.S at 575. Both parties agree that this case should be remanded to the district court for resentencing in light of *Kimbrough*.

At trial, Conner's attorney requested that the court depart from the 100:1 ratio and consider forthcoming amendments to the Sentencing Guidelines. The prosecutor responded that a district court errs when it constructs a sentencing range based on a crack-to-powder ratio other than 100:1. The district court did not comment on the 100:1 ratio. It is unclear from the record whether the district court judge would have given the same sentence were he aware that the Guidelines were discretionary. *See United States v. Clanton*, 538 F.3d 652, 659 (7th Cir. 2008). Therefore, we must remand this case for resentencing, so that the district court can, in its discretion, consider Conner's arguments regarding the 100:1 ratio. *See id.* at 660.

### III.  CONCLUSION

We AFFIRM Conner's conviction. Although the court erred in admitting the evidence under the "intricately related" doctrine, the evidence was admissible under Rule 404(b), and the prejudice resulting from the government's broader use of the evidence did not substantially outweigh its probative value. Furthermore, Conner waived his challenge to the aiding and abetting jury

instruction. We VACATE Conner's sentence, and REMAND
for resentencing in light of *Kimbrough*.