In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1119

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JERROD SANDERS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 CR 747—**David H. Coar**, *Judge.*

ARGUED JANUARY 14, 2010—DECIDED JULY 23, 2010

Before FLAUM, ROVNER, and HAMILTON, *Circuit Judges*.

ROVNER, *Circuit Judge*. At around 9:00 on Saturday morning, July 14, 2007, officers of the Chicago Police Department executed a search warrant at a suspected drug house at 5950 South Union in Chicago, Illinois. When no one answered their knock, the officers forcibly entered the home and found approximately 17 people who were using drugs and alcohol. The officers first performed a protective sweep of the residence, and then proceeded with their search.

Jerrod Sanders, along with numerous other persons, was in one of the rooms searched by the officers. When the officers entered that room, they ordered all of the occupants to get on the floor. All but two persons complied immediately. One of the non-compliant individuals was Sanders. Instead of moving to the floor, Sanders appeared to be fumbling with his hands near mid-body. Another officer arrived in the room, and Officer Pendarvis then pulled Sanders to the ground and handcuffed him. A search of Sanders revealed a 9mm semi-automatic handgun in his front pants pocket.

At that point, Pendarvis berated Sanders asking rhetorically what he was thinking and opining that "you were going to shoot me huh?" Sanders protested that he was going to tell the officers that he had a gun and indicated that was the reason he did not immediately comply with the order.

Seven people were arrested as a result of the raid, including Sanders who was charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Sanders was convicted of that charge after a jury trial and sentenced to 105 months' imprisonment, a three-year term of supervised release, and a $600 fine and $100 special assessment.

Sanders raises two issues on appeal. First, he argues that the district court erred in limiting the testimony that he could elicit at trial relating to the provision of *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Additionally, he challenges the procedure used by the district court in deciding to apply a sentencing enhancement.

Sanders made three incriminating statements in the course of his arrest and interrogation. As has been discussed, he made a statement at the scene of the arrest, explaining that he was going to tell the officers that he had a gun in his possession. In addition, he made two other statements at the police station. In the first instance, Pendarvis saw Sanders' rap sheet and in a joking manner again stated "oh, you was going to shoot me, huh?" Sanders replied that he was just trying to tell Pendarvis that he had a gun. Finally, Officer Kocanda interviewed Sanders, and in the course of that interview Sanders admitted that he purchased the gun from someone for fifty dollars.

On the morning of the trial, the district court conducted a hearing on a motion to suppress filed by Sanders, challenging the admissibility of his incriminating statements on grounds that he was not properly given the *Miranda* warnings. Specifically, Sanders challenged the admission of his statement at the residence that he was trying to tell Pendarvis that he had a gun, and the same statement made to Pendarvis at the police station. In addition, he sought to exclude his statement to Kocanda during his interview at the police station, in which he stated that he bought the gun from someone for $50. At the hearing, Pendarvis and Kocanda testified as to the *Miranda* warnings given to Sanders. Pendarvis testified that Kocanda provided *Miranda* warnings to the group of persons while they were at the police station. Kocanda contradicted that testimony in part, stating that he provided *Miranda* warnings to the group of individuals but that he did so in the backyard of the resi-

dence. Kocanda further testified that he provided *Miranda* warnings to Sanders individually a second time prior to interviewing Sanders at the station. Sanders did not present any witnesses at the suppression hearing. The district court granted the motion to suppress with respect to the statement at the residence in which Sanders declared that he was trying to tell Pendarvis that he had a weapon on him. That statement was made before any *Miranda* warnings were provided. As to the statements at the police station, the court denied the motion to suppress, finding that they were made after *Miranda* warnings were provided.

Although Sanders did not present any witnesses at the suppression hearing the morning of the trial, he nevertheless sought to introduce extensive testimony at the trial itself regarding the circumstances surrounding the *Miranda* warnings. During the cross-examination of Kocanda, Sanders sought to question Kocanda regarding the providing of *Miranda* warnings to Sanders and to the others. The court allowed Sanders to ask a question regarding the *Miranda* warnings given to Sanders, and an ensuing question as to whether Kocanda provided the warning to each of the seven persons arrested that day, but then cut off further inquiry on the subject. Sanders argued that he sought to question Kocanda and Pendarvis—and also to introduce testimony of four witnesses on direct examination—to explore the issue as to when and how the *Miranda* warnings were provided. Sanders intended to demonstrate that Kocanda and Pendarvis gave contradictory accounts as to how the *Miranda* warnings were given to the group of indi-

viduals. Sanders' counsel asserted that it was relevant to "bring out all those things and say somebody's wrong, lying, mistaken, bad memory, I don't know what. But these are things that we've got within this very compact period of time and space. This is what happened."

The district court prohibited that line of questioning, holding that it was an attempt to impeach as to a collateral matter, and that it presented a danger of jury confusion. Sanders now appeals, contending that the limitation thwarted his right to confrontation and cross-examination and deprived him of a fair trial.

The Sixth Amendment right of confrontation requires that a defendant be permitted sufficient opportunities for effective cross-examination. *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987); *United States v. Smith*, 454 F.3d 707, 714 (7th Cir. 2006). That does not mean, however, that no limits may be placed on cross-examination. The Confrontation Clause requires only that the defendant have "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987) (citing *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam) (emphasis in original)); *United States v. Linzy*, ___ F.3d ___, 2010 WL 1657968 (7th Cir. April 27, 2010). Trial courts may impose reasonable limits on cross-examination based on concerns about harassment, prejudice, confusion of the issues, a witness' safety, or questioning that is repetitive or marginally relevant. *Smith*, 454 F.3d at 714; *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

The district court refused to allow Sanders to explore the *Miranda* issue because the court was concerned that it would open the door to significant confusion on the jury's part as to whether that was an issue for it to decide. Sanders sought in effect a mini-trial on the issue of the timing and circumstances of the *Miranda* warnings. In addition to cross-examining the officers regarding their contradictory statements on the subject, Sanders desired to have four witnesses who were also arrested on that day testify as to whether they received *Miranda* warnings in the manner described by the officers. The district court understandably was taken aback by the extent to which Sanders sought to explore the *Miranda* issue, given that defense counsel had not presented any of those witnesses nor had defense counsel pursued extensive cross-examination at the hearing on the motion to suppress that morning, in which the *Miranda* issue was the crux of the motion. The extent to which defense counsel sought to focus on the *Miranda* issue became apparent to the court immediately before Pendarvis' testimony.

At that time, Sanders' counsel indicated his intent to cross-examine Pendarvis regarding the circumstances under which Sanders made the statement to him at the station, and the circumstances as to how and when *Miranda* warnings were given by him or anyone else. Sanders' counsel further indicated that he intended to explore the inconsistencies between Kocanda's testimony and Pendarvis' as to the circumstances under which Kocanda provided the *Miranda* warnings. The court determined that the *Miranda* issue was not an issue

for the jury, and that to the extent that defense counsel sought to impeach the government witnesses as to the *Miranda* issue, that would open the door to significant jury confusion. Accordingly, the court held that defense counsel could not explore the *Miranda* issue further.

In prohibiting exploration of the issue, the court—at least as to Pendarvis—appeared to prohibit cross-examination of Pendarvis as to the matter at all. The danger of confusion to a jury, however, is markedly greater where extrinsic evidence is admitted as to the matter, and for that reason the rules of evidence make a distinction between cross-examination as to an issue and the use of extrinsic evidence regarding it. For instance, Fed. R. Evid. 608(b) states that:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

In addressing whether Sanders should be allowed to cross-examine Pendarvis, the government declared that it seemed to be a fair ground for cross-examination to question Pendarvis as to statements about his own inter-

actions or exchanges with Sanders, but objected to questions concerning Kocanda's provision of the *Miranda* warnings because that constituted an attempt to use Pendarvis as a collateral witness to provide extrinsic evidence regarding the *Miranda* issue with respect to Kocanda, which was collateral to the issues at trial. No further distinction was made by the court or the attorneys, however, regarding the type of testimony sought, and the court ultimately prohibited any exploration of the *Miranda* issue.

Because the danger of confusion and undue delay is greater with the use of extrinsic evidence, the different uses should be separately considered by courts. *See, e.g., Simmons, Inc. v. Pinkerton, Inc.*, 762 F.2d 591, 603-05 (7th Cir. 1985). For instance, the danger of confusion in this case would have been substantial had Sanders been allowed to present the testimony of the four defense witnesses as to the circumstances under which they received, or did not receive, *Miranda* warnings. On the other hand, it is difficult to see how there is a substantial danger of jury confusion if a government witness is questioned as to inconsistencies in his own account as to the sequence of events that day including the timing and manner of the *Miranda* warnings.

In the end, however, we need not parse what questioning should have been allowed and what was properly disallowed, because even if the exclusion was error, it was harmless. The harmless error analysis applies to violations of the Sixth Amendment Confrontation Clause, *Smith*, 454 F.3d at 715, and therefore we may still affirm

if we are convinced that the jury would have convicted even absent the arguable error. *United States v. Conner*, 583 F.3d 1011, 1025 (7th Cir. 2009); *United States v. McGowan*, 590 F.3d 446, 456 (7th Cir. 2009). In making that determination, we look to such factors as "the importance of a witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of corroborating or contradictory evidence, and the overall strength of the prosecution's case." *Smith*, 454 F.3d at 715; *United States v. Castelan*, 219 F.3d 690, 696 (7th Cir. 2000).

Two officers testified that in the course of exercising the search warrant, they recovered a gun in Sanders' possession. Officer Piper was one of those officers, and his testimony is completely unrelated to the *Miranda* testimony of Kocanda and Pendarvis. As to Pendarvis, both he and Kocanda testified that Kocanda provided *Miranda* warnings to the persons who were arrested, but Kocanda recalled providing the warnings before transporting the group to the station whereas Pendarvis stated that Kocanda gave the warnings to the group when they were on the bench at the police station. There is no contradiction as to Kocanda's testimony that he provided the warning a second time when he formally interviewed Sanders individually, at which time Sanders stated that he bought the gun from someone for $50. The evidence against Sanders was significant, and the officers' inconsistency did not relate to the issue at trial, which was whether Sanders was found in possession of the gun. Instead, defense counsel sought to demonstrate that because they were mistaken, lied, or had a faulty

memory as to the *Miranda* warnings, then the jury should infer that their recollection of his gun possession is equally flawed. Given the consistency in their testimony as to myriad other details of the execution of the search warrant, the arrest, and the subsequent questioning, there is simply no basis to conclude that the lone inconsistency could have impacted the verdict.

Nor would the testimony of the defense witnesses have added anything. According to the proffer by defense counsel, three of the witnesses would have testified that they did not receive any *Miranda* warnings in the backyard of the house, and did not recall receiving any *Miranda* warnings as a group or otherwise in the station. Although that contradicts Kocanda's testimony regarding when *Miranda* warnings were given, it does not contradict Pendarvis' testimony because they could not recall whether they received warnings at the station. The other defense witness would have testified that he was not provided *Miranda* warnings at any point. The utility of that testimony is questionable, particularly since both defense and government witnesses indicated that individuals were separated from the group for restroom use and interviews, and therefore one person's experience is not necessarily indicative of what was said to the rest of the group. Even absent that problem, however, there is simply no basis to conclude that the inconsistency as to when the *Miranda* warnings were provided would cause a jury to doubt that Sanders was in possession of the gun, particularly given the overall consistency in the officers' testimony. In fact, identical testimony by all the officers as to every detail

in recounting the events of a mass arrest such as this one might itself cause a jury to question the credibility of the officers, as it could indicate coaching or collusion in their testimony. We cannot hold that the jury would not have convicted if Sanders had been allowed to introduce testimony as to the inconsistencies in the officers' recollections of the time and manner in which *Miranda* warnings were provided to the group of individuals arrested. In the context of the trial as a whole, the limitation on the exploration of the *Miranda* issue, if error at all, was harmless.

The final challenge by Sanders is to the district court's imposition of a two-level sentencing enhancement for obstruction of justice under U.S.S.G. § 3C1.1. That enhancement was based upon false statements by Sanders in his affidavit for the motion to suppress, in which Sanders declared that he obeyed the officers when they executed the search warrant, that he did not answer questions of any officer, and that at no time did he confess to possessing a gun on that date. At the sentencing hearing, the court began the inquiry by asking defense counsel whether he had "anything further to say" concerning that enhancement. Sanders asserts that the court thereby improperly allocated the burden of proof to him to prove that the enhancement did not apply, as opposed to requiring the government to prove that the enhancement was appropriate.

This argument borders on the frivolous. At the time of the sentencing hearing, the parties had both set forth their positions in written filings with the court. The

colloquy between the court and defense counsel at the sentencing hearing makes clear that the court believed that the government had proven that the enhancement was appropriate, and the court was providing defense counsel an additional opportunity to state the defense's position. The district court judge in fact discussed at length his belief that the statements by Sanders were false and material, and that the remaining issue was whether the statements were willful. The judge then indicated that he had a hard time seeing how the statements could have been the result of mistake, confusion or anything else other than a willful attempt to mislead, but the judge indicated to defense counsel that "[i]f I'm missing something, I'd be happy to hear it." That sequence of events is not an indication that the judge was shifting the burden of proof. Instead, it reflects a commendable effort by the court to ensure that the defense had the opportunity to address the issue at the hearing itself and, specifically, to address the issue in light of the conclusions reached by the court as a result of the written positions. There is absolutely no evidence that the court placed the burden on Sanders to prove the inapplicability of the enhancement.

The decision of the district court is AFFIRMED.