┌─────────────────────────────────────────────┐
**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1
└─────────────────────────────────────────────┘

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 17, 2020[*]
Decided September 18, 2020

**Before**

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 19-2854

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Western Division. |
| *v.* | No. 3:16-CR-50020(1) |
| EDWARD EVERETT JOHNSON, *Defendant-Appellant*. | Rebecca R. Pallmeyer, *Chief Judge*. |

## O R D E R

A jury convicted Edward Johnson of one count of robbing a bank with a dangerous weapon. The statute he violated, 18 U.S.C. § 2113, prohibits bank theft "by force and violence, or by intimidation." Johnson moved for a judgment of acquittal. He principally argued that the verdict was flawed because the indictment, which cited the

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

statute correctly, added a narrative with the conjunctive phrase "*and* by intimidation" (emphasis added). The district court correctly ruled that no harm resulted from this addition and that Johnson's other challenges were meritless, so we affirm.

The indictment alleged that in April 2016, "at Rockford, in the Northern District of Illinois, Western Division," Johnson robbed about $12,000 from "Chase Bank, 4425 Harrison Avenue, Rockford, Illinois." He did so "by force and violence and by intimidation" and "did assault and put in jeopardy the [life] of a bank employee . . . by the use of a dangerous weapon" in violation of 18 U.S.C. § 2113(a) and (d). Representing himself with the assistance of standby counsel, Johnson unsuccessfully moved four times before trial to dismiss the indictment for lack of particularity. He argued that it lacked details about how he used a dangerous weapon during the robbery. The district court ruled that the indictment sufficiently identified the statute he had allegedly violated, the elements of that statute, and the date of, location of, and amount taken during the offense.

The trial followed (with a judge from the Eastern Division of the Northern District of Illinois assigned to preside). Witnesses testified that Johnson approached a teller to withdraw cash and, when asked how much to take out, said, "Everything." He brandished a red bag and "starter" pistol (used to start races). An expert testified that starter pistols can create an "explosion" and "potentially destroy[]" an object blocking the barrel. The teller, who thought the gun was real and feared getting shot, emptied the drawer and put $12,000 into the bag. Johnson fled the bank in a taxi mini-van that matched the model he had checked out earlier from his employer. When police arrested him a few days later, they found the red bag containing his identification, a starter pistol, and about $10,000 in cash.

Two procedural matters affected the trial; the first one involved jury instructions. One instruction defined a dangerous weapon to include objects "that can be used to cause death or inflict severe bodily harm or injury" and those that may "not actually be capable of inflicting harm" as long as they "cause fear in the average person." Johnson thought that this definition was internally inconsistent. The district court acknowledged that the language might confuse the jury and suggested editing it, but Johnson changed his mind, stating, "No, just leave [the instruction] as is." The prosecution questioned Johnson's about-face, but he insisted, "Just leave it as is." Another instruction explained that, to convict, the jury had to find "beyond a reasonable doubt" that Johnson committed the offense by "force and violence, or by intimidation." Johnson did not

object to this instruction or that the instructions defined "intimidation" but not "force and violence" or "reasonable doubt."

The second matter involved testimony at trial. Over the prosecution's objection, Johnson wanted to testify about medical conditions that cause sleepwalking and what he had learned from doctors and scientific literature about sleepwalking. The district court ruled that Johnson could testify about his experiences sleepwalking but not about what he learned from experts because that would be impermissible opinion and hearsay evidence. When Johnson later suggested that the court prohibited him from testifying altogether, the court reiterated that Johnson was "welcome to testify" about his personal experiences with sleepwalking—including his "history," any "episodes where [he does] things that [he] has no memory of because of a sleep condition," and whether, for the robbery, he "can't remember any of this and, therefore, [has] some kind of amnesia about it." He could not, however, testify about "what an expert told [him] about sleepwalking and what it means in [his] case" or "describe this as a medical condition where all these factors have been identified by researchers . . . because that would be expert testimony." Johnson opted not to testify "under the circumstances."

The jury convicted Johnson of committing a bank robbery with a dangerous weapon, and as relevant to this appeal, Johnson moved for a judgment of acquittal. *See* FED. R. CRIM. P. 29(c). He argued that the court made three errors requiring acquittal. First, the jury instructions amounted to a constructive amendment. The indictment, he observed, charged him with robbing the bank "by force and violence *and* by intimidation" but the jury was instructed that to convict, they needed to find that he committed the offense "by force and violence, *or* by intimidation." Second, he should have been permitted to testify regarding his defense of sleepwalking. Third, the district court should have defined for the jury "reasonable doubt."

The district court denied the motion for acquittal and sentenced Johnson to a below-guidelines sentence of 55 months' imprisonment and three years of supervised release. In denying the motion, it reasoned that, although the indictment charged him with robbery "by force and violence and by intimidation," the underlying statute cited there lists "intimidation" and "force and violence" as alternative means to, not elements of, the offense. It also rejected the argument that Johnson was denied the right to testify, reiterating that it told him that he could offer testimony about his personal experiences with sleepwalking, but not hearsay or expert testimony. Finally, the court explained that, by instructing the jury that a conviction required guilt beyond a reasonable doubt, no further instruction on that point was necessary.

On appeal, Johnson reprises his three arguments for a judgment of acquittal: (1) the jury instructions constructively amended the indictment and prejudiced his ability to prepare a defense; (2) the district court interfered with his right to testify; and (3) the court should have defined for the jury "reasonable doubt." We review de novo the district court's Rule 29(c) ruling. *See United States v. Hernandez*, 952 F.3d 856, 859 (7th Cir. 2020).

The district court properly ruled that the jury instructions did not constructively amend the indictment and warrant a judgment of acquittal. A constructive amendment occurs when the government "broadens the possible bases for conviction beyond those presented by the grand jury." *United States v. Turner*, 836 F.3d 849, 863 (7th Cir. 2016) (internal citation omitted). But not all variations between an indictment and the jury instructions amount to a constructive amendment: The offense charged in the indictment must be "materially different" from the crime submitted to the jury, so that "it is impossible to know whether the grand jury would have indicted for the crime actually proved." *Id.* (internal citation omitted). But here, the indictment and conviction describe the same crime. The indictment charged Johnson with committing a bank robbery in violation of 18 U.S.C. § 2113(a) and (d). This statute prohibits robbing a bank by "force and violence, or by intimidation." This was precisely the crime defined for the jury in its unobjected-to instructions.

We recognize that the indictment also added text charging that Johnson committed the offense "by force and violence *and* by intimidation," but for two reasons this added text, which uses the conjunctive, does not alter our analysis. First, "[t]he general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Turner v. United States*, 396 U.S. 398, 420 (1970). Indeed, charging different acts (any of which may violate a statute) in the conjunctive and proving in the disjunctive—as was done here—is a "historical practice." *Griffin v. United States*, 502 U.S. 46, 51–56 (1991). And Johnson does not dispute that "force and violence" or "intimidation" are indeed different means or acts by which the statute is violated. *Cf. Mathis v. United States*, 136 S. Ct. 2243, 2249, 2254–55 (2016) (distinguishing between elements and means).

Second, Johnson does not explain how he was prejudiced by any discrepancy between the indictment and jury instructions. Because Johnson did not object to the jury instructions, the instructions could not warrant a reversal unless they prejudiced his

defense. *See United States v. McClellan*, 794 F.3d 743, 753–54 (7th Cir. 2015). Although he says that the instructions "surprised" and prejudiced him "per se," he does not elaborate. With no articulated reason to believe that Johnson's defense would have been different without this discrepancy, we will affirm his conviction. *See United States v. Kincaid*, 571 F.3d 648, 655–56 (7th Cir. 2009) (no prejudice when defendant did not object to jury instructions, indictment correctly identified statute of conviction and statutory elements, and stipulated facts supported elements of indicted offense).

Next, we address Johnson's argument that the district court interfered with his right to testify when it barred him from offering hearsay and expert opinion about sleepwalking. A criminal defendant's right to testify "is not unlimited and may bow to accommodate other legitimate interests in the criminal trial process," including the rules that "control the presentation of evidence." *Stephens v. Miller*, 13 F.3d 998, 1002 (7th Cir. 1994) (citing *Michigan v. Lucas*, 500 U.S. 145, 149 (1991); *Rock v. Arkansas*, 483 U.S. 44, 55, 55 n.11 (1987)). The district court reasonably prohibited Johnson, a lay witness, from testifying about the second-hand, hearsay information that experts gave him. *See* FED. R. EVID. 701, 801. In doing so, the court did not impede his right to testify generally, including about his personal experiences with sleepwalking. *See Caffey v. Butler*, 802 F.3d 884, 896 (7th Cir. 2015). It properly emphasized that he was "welcome" to testify about his history of sleepwalking, episodes when he forgot where he was or what he was doing, and any experience with those symptoms during the robbery.

The court also correctly declined to define for the jury "reasonable doubt." We have long held that "it is inappropriate for the trial judge to attempt to define 'reasonable doubt' for the jury." Seventh Circuit Pattern Jury Instructions, Comment to Instruction 1.04: Reasonable Doubt Instruction; *see also United States v. Hatfield*, 591 F.3d 945, 949–50 (7th Cir. 2010).

Johnson has one last argument requiring discussion, but it also falls short. He contends that, because it shoots only blanks, a starter pistol is not a "dangerous weapon" under 18 U.S.C. § 2113(d). The Supreme Court has held that, for three "independently sufficient reasons," non-firing guns are dangerous weapons for purposes of the bank robbery statute: (1) all firearms are dangerous, (2) even non-firing guns cause injury when used as a bludgeon, and (3) their display "instills fear in the average citizen," creating "an immediate danger that a violent response will ensue." *McLaughlin v. United States*, 476 U.S. 16, 17–18 (1986). Those three reasons apply here. When Johnson brandished his starter pistol, it frightened the teller, who feared that she would be hurt or "shot" with it. And, as an expert testified, the pistol could

have caused explosive harm at short distances. To the extent Johnson challenges the jury instruction's definition of a dangerous weapon, he waived that argument. He twice affirmatively agreed to the instruction at trial, saying so to both the court and the government. *See United States v. Conner*, 583 F.3d 1011, 1026–27 (7th Cir. 2009).

We have considered Johnson's other arguments, and none has merit.

AFFIRMED